Richard S. Heller, J.
Claimant’s intestate, William Blum, had been confined to Rockland State Hospital for about one week when he died of strangulation. The evidence would indicate that Blum had firmly affixed his necktie around his neck, tied the other end to the bed and then rolled from the bed to the floor.
Mr. Blum was 73 years of age at the time of his commitment and had been totally blind for more than a year. He was examined at Bellevue Hospital in Hew York City and from this examination an order of confinement was entered. The examination indicated that Mr. Blum was suffering from delusions and hallucinations, senile psychosis, paranoid type.
There were certain answers made by the examining doctors to the questions printed on the examination form of the Department of Mental Hygiene upon which the claimant’s counsel placed great emphasis as indicating that the State had knowledge that the incompetent might try to destroy himself.
Question 133 of the form reads as follows: ‘ ‘ 133. Does the patient show a tendency to injure ... .self?......or to injure others? .......” In the blank spaces following the question, the word “ Pos ” had been typed in. This the court assumes to mean possible, or possibly.
Question 134 of the form reads as follows: ‘1134. What dangerous tendencies does the patient show .......” There was no entry or answer to this question. •
The allegations of the claim and the proof offered attempt to show that the State was negligent as follows: (1) That the State had knowledge of suicidal intent and failed to provide reasonable supervision; (2) that the State permitted the patient to wear a necktie; (3) that the State did not provide adequate treatment; (4) that the State did not place this patient in a ward for disturbed persons.
*1080 Evelyn Lewis, the claimant, is the daughter of Mr. Blum'. In her direct testimony she told of having her father committed and of visiting him the day before he died. At that time her father asked her to “ take me home ” and “ that they (the ¡State) are doing nothing for me.” On cross-examination she testified that her father was never angry; that he was a very happy person; that he liked people and people liked him; that he never made any attempt to take his own life. His only complaint was that people were shining bright lights in his eyes.
The claimant further testified that she had talked with Dr. Wiggers, who was in charge of the admitting ward, concerning the traits of her father. She testified that she told the doctor that her father was a cheerful person who had no history of self-destruction; that he was a big-hearted man with a tremendous number of friends; that he took an interest in world events and that he had no assaultive tendencies.
Dr. Wiggers, the psychiatrist in charge of the admitting ward where Mr. Blum was placed, testified that the inmate was sent to Rockland for observation. That it was customary for new patients to be placed in the admission ward until a diagnosis could be made, after which, the patient would be placed for proper treatment in what is known as a ward for disturbed persons. Dr. Wiggers also testified that it was customary for new patients to retain their own clothes until such time as they were transferred from the admission ward.
On the day of his death Mr. Blum went to the head attendant and stated that he was very tired and would like to lie down. After the attendant consulted with Dr. Wiggers, Mr. Blum was allowed to rest in a room adjoining the office. He was left alone for a short period and during this time he took his own life.
While the incident is unfortunate, there is nothing in the testimony that can justify finding the State negligent in its care and supervision of the deceased. On the contrary, the facts show care, consideration and a compliance with accepted practice.
The State has a duty to furnish the inmates of mental institutions with every reasonable precaution to protect them from injury, but it is not an insurer of their safety. (Root v. State of New York, 180 Misc. 205; Fowler v. State of New York, 192 Misc. 15; Kubas v. State of New York, 198 Misc. 130.)
Since the claimant has failed to establish negligence on the part of the State, the motion made by the Attorney-General at the conclusion of the trial to dismiss the claim is granted.
Let judgment be entered accordingly.